L. EVERINGHAM & COMPANY, Appellant, v. NICOLL HALSEY.

**Factors:** ACCOUNT: *Waiver.* Where a factor sends his principal statements of sales made, in which he does not state the gross price received on sales, but merely the net price after deducting from the former price charges for cartage, for demurrage claimed by the railroad company for detention of cars in unloading, and for commissions, and the principal, with knowledge of the way the statements are made up, accepts them as correct, he is bound by them, if in fact correct.

**Settlements.** Where, on settlement of account, a principal gave his factor a note for the balance due, in an action thereon, additional charges, then made by the factor, should be disallowed.

SAME. Where, on a settlement of account between a principal and his factor, the former was charged with a sum paid to the railroad as demurrage, which was refunded, but the principal credited with only a part thereof, in action by the factor for balance on account the principal will be credited with the full amount as of the date of the settlement, it not appearing when it was refunded.

COMMISSIONS: *Fraud.* A factor cannot be deprived of commissions on account of an honest mistake in rendering his account.

Evidence: ANSWERS TO INTERROGATORIES. In an action by a factor for balance of account, his responses to interrogatories attached to defendant's answer, made from his books and papers, are entitled to the same weight as the accounts themselves.

*Appeal from Palo Alto district court.*—HON. W. B. QUARTON, *Judge.*

WEDNESDAY, FEBRUARY 8, 1899.

ACTION in equity to recover upon a promissory note, and to enforce by specific attachment a lien upon certain personal property pledged for its payment. Defendant answered, putting in issue the fact of indebtedness, and by counterclaim asked damages on the attachment bond, and also sought to recover a large sum which he claimed to be due from plaintiff on account. There was a trial to the court, and judgment in defendant's favor for eight thousand six hundred and fifty-three dollars and fifty-six cents, with interest. Both parties appeal. We shall denominate plaintiff the appellant.—*Reversed.*

*John E. Burke* and *Soper, Allen & Morling,* for appellant.

*Charles A. Clark, Clarke & Cohenour,* and *McCarty & Linderman* for appellee.

WATERMAN, J.—L. Everingham, who is doing business under the name of L. Everingham & Co., is a commission merchant in the city of Chicago. Defendant was for many years a dealer in hay and grain in the town of West Bend, in this state. The transactions between these parties began in the year 1889, and consisted of shipments of hay and grain by defendant to plaintiff for sale by the latter on commission. There is a claim in the pleadings that plaintiff was in fact the purchaser of much of the property so shipped,

and it appears that it was sustained by the trial court to some extent, though just how far we are unable to say from the decree. We can dispose of this matter very briefly. No such claim is urged by defendant's counsel in this court, and we find nothing in the record which lends it any substantial support. The controversy, as exhibited by the pleadings, is narrowed in another respect. No claim is made on account of any shipments except of hay, and only of the hay shipped after about the twenty-fifth day of July, 1891, as will more fully appear hereafter.

II.   The note in suit was given July 31, 1894, and represented a balance of account supposed to be due plaintiff at that time. It is now insisted on the part of defendant that nothing was in fact owing by him when the note was given, but, on the contrary, plaintiff was indebted to him in a large amount. This claim of defendant grows out of the business dealings betwen the parties. These will have to be explained to some extent, in order that the contention of defendant may be fully understood. From the time these parties began doing business together, in 1889, until they ceased, about the first of the year 1895, defendant consigned to plaintiff some 1,260 cars of hay. Up to about July 25, 1891, plaintiff made returns to defendant, of the shipments, in the following form:

Entry I.                              Chicago, June 29, 1891.
Folio 46.                      Account Sales by L. Everingham & Co.
                                        Commission Merchants.
   For Account of Nicoll Halsey.

| Received | Car | Freight | Description | Date Sold | Quantity | Price | | Amount | |
|---|---|---|---|---|---|---|---|---|---|
| June 22 | 5990 | 2800 | Hay | | 8620 | $13 | 00 | $56 | 03 |
| | | | 290 Dem. | | 3430 | 12 | 00 | 20 | 58 |
| | | | some badly stained | | 3330 | 8 | 50 | 14 | 15 |
| | | | loose | | 110 | | | | 35 |
| | | | | | | | | $91 | 11 |

Charges, etc.:   Freight and inspection.. ............$30 00
                 Cartage, sampling, weighing .........     45
                 Storage, insurance, interest on freight,
                      commission........... ..... ......  3 87
                                                              $34 32
            Net proceeds .....................................  $56 79
E. & O. E.

We set out a filled blank as it appears in the abstract. It may save something in the way of explanation. As we have already said, nothing is claimed by defendant on account of shipments prior to the date last mentioned. But about this time plaintiff ceased making returns such as that set out. He began and continued during their further relations rendering accounts in this form:

Entry 8          (17)                    Chicago, Jul. 2, 1892
Folio 14.

L. Everingham & Co., Commission Merchants.
Bought of Nicoll Halsey, West Bend, Ia.

| Date | Car | Freight | Description | Quantity | Price | Amount |
|------|-----|---------|-------------|----------|-------|--------|
| 13 | 6426 | 34 28 | Hay | 9–440# | $7 00 | $33 04 |
|    |      |       |     | 10–020 | 6 00 | 30 06 |
|    |      |       |     | 130 |      | 25 |

Hot and damaged,                                        $63 35

Charges: Freight, inspection.................$34 28
         Sampling, weighing................     45
                                              ———        $34 73

    Credited in account................. ....................$28 62
E. & O. E.

It will be observed that in this return the price received for the hay is given, sixty-three dollars and thirty-five cents, and there is deducted from this the sum of thirty-four dollars and seventy-three cents, leaving a net sum due defendant of twenty-eight dollars and sixty-two cents. It is not denied that the defendant received the whole of the net balances shown by these returns. But he says that the hay in each instance sold for more than was reported, and that his net balance should have been much larger. The testimony shows without dispute that the price reported was not in fact that for which the hay was sold, but that from the price actually paid there was deducted cost of delivery in cases where delivery had to be made, car service, and commissions upon the sale; that, after these deductions were made, the balance was reported to defendant as the price received for the hay; and the accounts rendered show this

price, with the further deductions therefrom of freight and
weighing. "Car service" is explained as meaning a demur-
rage charge made by the railway companies of one dollar
per day on each car detained over forty-eight hours in
unloading, and "cartage" is a charge made for the expense
of delivering hay when the purchaser did not take it on the
track.

III. It is claimed by defendant that these charges,
for cartage especially, and for demurrage in part, are wholly
fictitious, and are trumped up to swell the account against
him. He insists that they should not be allowed, and that
because of this fraud no commission should be allowed plain-
tiff. This claim seems to have received the sanction of the
trial court, for the amount of the judgment given, about
equals the total of these charges. We may accept the law
as stated by counsel for defendant,—that plaintiff was
required to keep accurate and full accounts and render cor-
rect statements to defendant. But as to the statements of
account we may say that if defendant knew the manner in
which they were made up,—that cartage, car service, and
commissions were deducted from the gross price received
for the hay, and the balance given in the account as
the price received,—and if he accepted these state-
ments without objection, he cannot now claim any-
thing merely because of the form in which the account was
made out. If he can recover in such case it must be on
the ground that such expenses were not, in fact, incurred by
plaintiff. Doubtless the burden is upon plaintiff to show
that these items were legitimate and proper charges.

IV. Did defendant know that these charges were made
against him, and that his net balance, as shown on the state-
ments rendered, represented what was left from the gross
proceeds after paying, not only freight and weighing, but
also cartage, car service, and commissions? We think he
did, and we have several reasons to assign in support of
the conclusion. It is admitted that prior to about July 25,

1891, the business was conducted by plaintiff in an honest and satisfactory manner. This was during the time when the commission blanks were used for making returns. Upon these blanks the commission which was fifty cents per ton, appeared as a charge; but no charge appears for cartage. Yet we find that during that time cartage was charged on more than one-fifth of all the cars shipped. It does not appear on the account as an item of charge. It was, as in the later instances, deducted from the gross price of the hay, and the statement gives the remainder as the amount for which the hay was sold. We need not take the time to set out the reasons given by plaintiff for changing the form of blank upon which the returns were made; nor is it material to consider whether the custom in Chicago would warrant this method of making returns. If, as we have heretofore said, defendant understood the returns, and accepted them without objection, he is bound by them, if they were in fact correct. As a further reason in support of the conclusion of fact above announced, we have to say that defendant's own testimony shows that he knew the expense of delivery would be paid out of the proceeds of the hay, when delivery had to be made. So, also, with reference to commissions. Defendant admits that he knew a commission was charged, and that the amount thereof was fifty cents per ton. While the purchase blanks did not show this charge in terms, it is evident that defendant was aware the balance shown was arrived at by deducting plaintiff's charge for selling. But there is still further evidence on these points. It is shown that in a number of instances a report of the price actually paid or agreed to be paid was sent defendant as soon as the sale was made, and that this was followed in a few days with the statement, on the purchase blanks, of the same sale, in which the price given as received for the hay was less than the amount stated in the notice by the sum of cartage and commission. No complaint was ever made by

defendant of these apparent discrepancies, which tends strongly to show that he understood them. In addition to all this, two of plaintiff's salesmen, who testify in his behalf, say that defendant fully understood the purchase blanks, and knew that cartage charges were made; and plaintiff swears that this form of return was adopted for defendant's accommodation, and with his full consent. Altogether we are convinced that defendant was well aware that he was charged frequently for cartage and demurrage, and always for commissions. If he did not know the exact amount of the first items in the case of each shipment, it was only because he did not care to inquire.

V. There is no evidence upon which to rest a finding that these charges, or any of them, were fictitious. They are verified by a number of witnesses. An account seems to have been kept of them by plaintiff. While objection is made to the form of the account, we do not consider it as of weight. The charges for commission and demurrage, especially, are established beyond dispute.

VI. There are some additional charges made now by plaintiff for telegrams, ninety-five dollars and eighteen cents, and for car service, etc., two hundred and thirty-five dollars and forty-eight cents, which we are not inclined to allow. We shall accept the giving and receipt of the note as a settlement of accounts, with the exception of one item, for which defendant is admittedly entitled to credit. Of demurrage paid by plaintiff and charged to defendant, the sum of three hundred and twenty-five dollars was refunded by the railway companies. On the accounts rendered, defendant was through mistake given credit for only thirty-one dollars. He should have a further credit of two hundred and ninety-four dollars on this account. We have no way of ascertaining the date or dates when this money was refunded, so we shall allow the credit as of the date of the note. This will leave a balance due plaintiff of two hun-

dred and twenty-nine dollars and one cent, upon which he is entitled to interest at 8 per cent. from January 11, 1895. We know of no rule that will punish plaintiff, by loss of his commission, for an honest mistake, as this appears to have been. See *Rochester v. Levering,* 104 Ind. 562 (4 N. E. Rep. 203); *Sampson v. Iron Works Co.,* 6 Gray, 120.

VII. It is thought by appellee that the evidence offered by plaintiff to support his account is not of a satisfactory character; that the books of account should have been produced. This evidence was in the form of responses to interrogatories, which were attached to the answer of defendant. These answers were made from books and papers in plaintiff's possession. No reason appears why we should not accord the facts therein stated the same weight as if disclosed by accounts offered on the trial. What we have said disposes of all claims on the attachment bond. The district court found, and correctly, that the writ of attachment was not maliciously issued, and the only ground for claiming that it was wrongfully sued out was that nothing was due plaintiff at the time. This, we have seen, is not correct. The case will be remanded for a decree in harmony with this opinion.—REVERSED.