Rochester v. Levering.

No. 11,698.

ROCHESTER v. LEVERING.

PRINCIPAL AND AGENT.—*Purchase by Confidential Agent of Principal's Property.*—Where one, while occupying the relation of general confidential business agent of another, is requested by the latter to find a purchaser at a fixed price for certain land, but being unable to do so proposes to buy the property himself at that price, at the same time communicating to his principal all the facts within his knowledge about the land and its value, misrepresenting or concealing nothing, and a sale is accordingly made to him, the price paid being at the time a fair one, such sale is valid.

SAME.—*Burden on Agent to Show that Sale was Fair.*—When the sale is seasonably attacked, the burden is on the agent to show that the bargain was fair and equitable, that he gave all the advice in his knowledge pertaining to the matter, and that there was no suppression or concealment which might have influenced the conduct of the principal.

SAME.—*Agreement to Lay Out into Lots.*—*Payment from Proceeds.*—A writing, executed by the agent as evidence of his obligation for the purchase-price, stipulating that he is to lay the land out into town lots, but specifying no time, and to pay the agreed price, with a certain rate of interest, out of the proceeds of the sales of said lots, in money or promissory notes taken, is not so contingent or unfair as to invalidate the sale.

SAME.—*Subsequent Transactions.*—The sale of the land can not be affected by independent dealings which were had afterwards, and which had no relation to the principal transaction.

Rochester *v.* Levering.

SAME.—*Insurance of Principal's Property in Company Represented by Agent.*—Where the general business agent of another is also the agent of an insurance company, and in the latter capacity writes insurance upon the property of his principal, but with such knowledge on the part of the company as would make the policies valid, or at most merely voidable, he is entitled to be reimbursed for the premiums paid by him.

SAME.—*Forfeiture of Compensation for Services.*—Mere errors of judgment on the part of an agent while managing his principal's business, or omissions which do not amount to misconduct or culpable negligence, do not work a forfeiture of the agent's right to compensation for services.

SAME.—*Interest.*—Where, in order to meet the calls, in uncertain amounts, of his principal upon him, it is necessary that an agent—who, as it is received, mixes his principal's money with his own and uses it in his business—shall keep money available, he is not chargeable with the highest obtainable rate of interest on the sums remaining in his hands, but legal interest only.

SAME.—*Agent's Liability for Loss.*—An agent who, by neglect and want of diligence, fails to collect money of his principal loaned by him, is liable for the loss.

SAME.—*Judgment Without Relief.*—*Trust Funds.*—Under section 577, R. S. 1881, a judgment without relief against an agent, in favor of his principal, for money for which he is liable as a trust fund, is proper.

From the Tippecanoe Circuit Court.

*S. P. Baird, J. E. McDonald, J. M. Butler* and *A. L. Mason,* for appellant.

*J. R. Coffroth, T. A. Stuart, F. H. Levering* and *F. B. Everett,* for appellee.

MITCHELL, J.—A complaint filed by John Levering against Madeline Rochester, and a cross complaint filed by the latter against Levering, constitute the basis of the controversy exhibited in the record in this case.

The complaint seeks a recovery upon an account exhibited with it, for services rendered, money loaned, paid out and expended by the plaintiff at the defendant's instance and request. The cross complaint charges that from the year 1862, down to and including the year 1878, the plaintiff, Levering, was in the relation of agent and attorney to the defendant, Mrs. Rochester, having in charge the control and management of all her property and business, and that while in such

relation he so managed her affairs and business and dealt with her as that upon an accounting and proper adjustment of their business a large sum of money, amounting to over $20,000, would be due her.

Upon issues made the case was heard and a special finding of facts, with conclusions of law stated thereon, filed by the court. With the facts as found, both parties are content, while each excepted to and are yet, by assignment of errors and cross errors, respectively, contending against some of the conclusions of law.

The controversy involves a great variety of transactions, covers a period of more than eighteen years of business, and required the adjustment of an account aggregating but little short of $80,000. That it was reduced to the order and symmetry in which the special findings present it, is abundant evidence that the case was tried with extraordinary care and ability.

The facts upon which the first conclusion of law is based are, in substance, as follows: Mrs. Rochester, in addition to a large amount of other property, was the owner of thirty acres of land in the extreme south part of the city of Lafayette. Through her agents, Mr. Levering and his brother, she sold fifteen acres off the south side of this tract to Owen Ball for $4,000, in August, 1865. About the same time Ball offered to purchase the remaining fifteen acres for $3,-500. This was refused. The appellant and Mr. Levering about that time went to Ball and solicited him to purchase the remaining fifteen acres for $4,000. Ball again offered $3,500, and would give no more. Mrs. Rochester then requested the appellee to find a purchaser for this tract and other unimproved lands owned by her, which she was anxious to sell. This the appellee tried to do, but the highest offer made for the tract in question was $3,500 by Ball. The tract was unfenced, unimproved and unproductive, and its main value was probable and prospective for platting into town lots with a view to selling it in lots. The court finds

it difficult to state the real value of the tract at the time of the sale to Levering, hereinafter mentioned, but its approximate value at that time was found to be $4,500.

It is found that on the 19th day of February, 1869, while Mr. Levering was acting as the confidential agent of Mrs. Rochester, and while acting as her agent to sell the tract of land mentioned, he proposed to buy the land from her himself, at the price of four thousand dollars, agreeing that he would lay it out into lots, as an addition to the city of Lafayette, and that he would pay the price mentioned, with six per cent. interest, in money or notes, out of the proceeds of sales of the lots.

He represented to her that, in his opinion, it would be better for her to sell it to him than to hold it. It is found by the court that he fully and correctly communicated to her all the facts of which he had knowledge about the tract of land and its value, and that he made no misrepresentation, nor did he conceal from her any fact concerning the land or its value, and that the price offered, so far as could then be known, was not manifestly inadequate. Mrs. Rochester had full confidence in the judgment of her agent, and relied upon his advice as to the propriety of making the sale, and concerning the value of the land.

Under these circumstances, and without consulting any person other than Mr. Levering, the appellant sold the tract to him on the terms proposed, and executed to him a warranty deed therefor. As evidence of his obligation to her for the purchase-price, he executed an instrument of writing signed by him, in which the purchase of the land is recited, and in which his agreement to pay is stated as follows: " I am to lay out said land into town lots, as an addition to the city of Lafayette, and will pay to said Madeline Rochester, out of the proceeds of the sales of said lots, in money or promissory notes taken, the sum of four thousand dollars, with interest at the rate of six per cent."

It is found that the tract was laid out into sixty-nine town

lots, in the month of April, 1869; that a plat was filed, calling it "John Levering's addition to Lafayette," and that from May 28th, 1869, to August 9th, 1874, Levering sold thirty-nine lots, receiving for principal and interest from such sales, in the aggregate, $9,010.85, leaving thirty lots still unsold.

The purchase-money was never actually paid by Levering, but in a settlement had on the 15th day of June, 1874, which was afterwards found to be erroneous, Levering credited Mrs. Rochester's account with the $4,000 and the accrued interest thereon, according to the contract as modified. The appellant paid out about $600 for the improvement of Fourth street, which ran along or through the tract; but this sum was paid by using a judgment, which belonged to Mrs. Rochester, against one Austin. This judgment was used by Mr. Levering, upon an agreement with Mrs. Rochester that he would change his obligation to her so as to allow ten per cent. interest on the $4,000 purchase-money for the land, instead of six. This was accordingly done.

The court also found that Levering had a well appointed and centrally located office in the city of Lafayette, with two or three clerks constantly in attendance; that by reason of these facilities, and his extensive business connections and his energy and industry, he had great advantages in effecting sales of real estate; that soon after the purchase from Mrs. Rochester, Fourth street, lying along the east line of the addition, laid out of the land purchased, was improved, and on that account lots in that locality became more desirable; that many of them were sold at prices largely in excess of the price paid for the land in bulk. The court finds it impossible to state how much of the advanced price obtained was due to the superior facilities and the individual energy, industry and efforts of Levering.

Among other facts found, in addition to those above recited, which cast some light on the transaction, it may be stated that it was found that Mrs. Rochester was a lady of

superior intelligence, but inexperienced in business matters, or in relation to the value of real estate; that she had entire confidence in the judgment and honesty of Mr. Levering; that he generally explained all business transactions to her, and that he had the entire management and control of her property and business; that he kept her accounts, which were always open to her inspection, and that she frequently examined them.

The first conclusion of law stated by the court was, that the sale of the land was valid and binding and free from actual or legal fraud, and that the plaintiff Levering's account should be charged with the sum of four thousand dollars, the purchase-price of the land, as so much money received by him at the date of the sale.

The conclusion of law which affirms the validity of this sale is the chief subject to which the appellant's argument is directed. It may be remarked, that so far as the contention relates to sales by a trustee or other person having a power or agency to sell property, which, in the execution of such agency, the agent or trustee either directly or indirectly sells to himself, the argument is not deemed to be relevant to the case under consideration. That an agent to sell property can not, either directly or indirectly, become the purchaser from himself, and that such sale is voidable absolutely at the election of the principal or beneficiary, without regard to its fairness, are propositions inflexibly established.

The facts found do not make this a case of that description. While they disclose a relation of the closest and most confidential character between principal and agent, so far as the general management of the financial and business affairs of the principal were concerned, they also show that the agent had no power to sell, and that he did not, in fact, make the sale. The agency with respect to the particular tract of land is stated in the following language: "That said Madeline was desirous of selling this tract, as well as her other unimproved land, and requested said plaintiff to find a pur-

chaser therefor, which he tried to do ; * * * that while acting as the confidential agent of said Madeline, and her agent to sell said fifteen acre tract, plaintiff proposed to buy it himself." Fairly interpreted, this means that while in the relation of general confidential business agent to the appellant, Mr. Levering was requested to find a purchaser for the land who would pay a fixed price, and while so acting as agent to sell he proposed to purchase the land from his principal and negotiated with her the purchase which is now the subject of controversy.

The case is one arising out of a transaction between a confidential agent and his principal, who purposely and intentionally dealt with each other concerning a subject-matter involved in the agency. The result of the negotiation between the two was, that the principal consciously and knowingly transferred to her confidential agent the land in controversy at a stipulated price.

While a transaction of the character disclosed is not necessarily voidable at the election of the principal, a court of equity, upon grounds of public policy, will, nevertheless, subject it to the severest scrutiny. Its purpose will be to see that the agent, by reason of the confidence reposed in him by the principal, secures to himself no advantage from the contract. When the transaction is seasonably challenged, a presumption of its invalidity arises, and the agent then assumes the burden of making it affirmatively appear that he dealt fairly, and in the richest of faith imparted to his principal all the information concerning the property, possessed by him.

The confidential relation and the transaction having been shown, the onus is upon the agent to show that the bargain was fair and equitable, that he gave all the advice within his knowledge pertaining to the subject of the sale and the value of the property, and that there was no suppression or concealment which might have influenced the conduct of the principal. *McCormick* v. *Malin*, 5 Blackf. 509, 522; *Cook* v.

Rochester *v.* Levering.

*Berlin, etc., Co.*, 43 Wis. 433; *Porter* v. *Woodruff*, 36 N. J. Eq. 174; *Young* v. *Hughes*, 32 N. J. Eq. 372; *Farnam* v. *Brooks*, 9 Pick. 212; *Moore* v. *Mandlebaum*, 8 Mich. 433.

As applicable to cases of the character under consideration, the rule is succinctly stated by a learned author in the following language:

" Passing to dealings connected with the principal's intervention, in any contract of purchase or sale with the principal, or other transaction by which the agent obtains a benefit, a presumption arises against its validity which the agent must overcome; although this presumption is undoubtedly not so weighty and strong as in the case of a trustee. The mere fact that a reasonable consideration is paid and that no undue advantage is taken, is not of itself sufficient. Any unfairness, any underhanded dealing, any use of knowledge not communicated to the principal, any lack of the perfect good faith which equity requires, renders the transaction voidable, so that it will be set aside at the option of the principal. If, on the other hand, the agent imparted all his own knowledge concerning the matter, and advised his principal with candor and disinterestedness as though he himself were a stranger to the bargain, and paid a fair price, and the principal on his side acted with full knowledge of the subject-matter of the transaction, and of the person with whom he was dealing, and gave full and free consent—if all these are affirmatively proved, the presumption is overcome, and the transaction is valid." 2 Pom. Eq. Jur., section 959.

Subject to the burdens thus imposed, as was stated in *Fisher's Appeal*, 34 Pa. St. 29, " it never has been supposed that a principal might not sell to his agent, or the client to his attorney; and that their titles, thus acquired, would not be good in the absence of fraud on their part."

In the light of the foregoing principles we may now briefly recur to the facts.

Mrs. Rochester and her agent called on Mr. Ball, who had bought half the thirty acre tract, and solicited him to pur-

chase the remaining fifteen acres at the price of four thousand dollars. He refused to pay more than thirty-five hundred. The agent, then being solicited to find a purchaser, was unable to secure an offer in excess of that made by Ball. The property being unproductive, its value purely prospective and largely contingent on events that might or might not happen, such as the growth and improvement of the city to which it lay contiguous, and the demand which might arise for lots in that direction, can it now be said, after this lapse of time, that the price paid was not fair?

That it was difficult to ascertain the real value of the land with much certainty at the time of the sale, is disclosed in the special finding of facts, and that it was necessarily so is inherent in the very nature of the case. Considering the length of time which intervened from the sale until the investigation was set on foot, the condition of affairs at the time the sale was made, the inflation in values, and the speculation in real estate which ensued, and continued until the latter part of 1873, covering the period during which substantially all the lots disposed of were sold by Levering, and the obstacles which lay in the path of the investigation are apparent. That the approximate value, as arrived at under these circumstances, is stated to have been forty-five hundred dollars fully justifies the further statement that the price paid was not manifestly inadequate, in effect that the price was fair. As was said by Mr. Justice Story, in *Prevost* v. *Gratz*, 6 Wheat. 481, "length of time necessarily obscures all human evidence; and as it thus removes from the parties all the immediate means to verify the nature of the original transactions, it operates by way of presumption, in favor of innocence, and against imputation of fraud. It would be unreasonable, after a great length of time, to require exact proof of all the minute circumstances of any transaction, or to expect a satisfactory explanation of every difficulty, real or apparent, with which it may be encumbered."

When it is remembered that the transaction was had in

February, 1869, and that it was permitted to stand unchallenged through all the changes in the situation and fluctuation of prices until January, 1883, we think all that can be required of the defendant is to make it certain to a common intent that the price paid was fair and equitable. This has been done. That the purchaser, by the succession of events, the rise in value of the property on his hands, coupled with his energy, ability and industry, and his facilities for selling the lots, sold the property for more than he paid for it, can not now be taken as the measure of its value at the time of the purchase, nor can it be assumed on that account that the plaintiff was overreached in the purchase. *Fisher's Appeal, supra.* Having paid a fair price for the property, and fully communicated to his principal all the facts within his knowledge about the land and its value, misrepresenting nothing, concealing nothing, the appellee has brought the transaction within the rule which authorizes it to stand.

As related to the subject we are considering, it was urged on the argument that the obligation given for the purchase-price was such that the purchaser came under no absolute contract to pay for the land, that his liability to pay was contingent upon his realizing the amount stipulated to be paid from sales of lots, and that this was so unfair that the sale should have been set aside.

We do not think the contract admits of the construction contended for. The contract recited that the land was conveyed at the price of $4,000. The import of this was a debt for a specified amount then presently due. The unilateral stipulation contained in the writing, to the effect that the purchaser would lay the land out into lots, specifying no time, and pay the amount with interest out of the proceeds of sales in money or promissory notes, was, if of any force whatever, at most an agreement on his part that he would do so within a reasonable time.

It is insisted that because the Austin judgment which belonged to Mrs. Rochester was used by her agent to pay for the

street improvements, and because the amount of the purchase-price of the land and the accrued interest thereon were liquidated by being included in a partial settlement made in 1874, which was afterwards found to be erroneous, an imputation of bad faith in making the purchase of the land arises. These were all matters occurring long after the transaction which is assailed was completed, and can not be supposed to have been contemplated. They did not exist at the time the land sale was made, and could, consequently, have exerted no influence upon it, one way or the other. They were matters only relevant to be considered in the adjustment of the accounts between the parties, and in that connection they were considered by the learned court and properly adjusted. The sale of the land can not be affected by independent dealings or transactions which were had afterwards, and which had no relation to the principal transaction here involved. *Sherman* v. *Hogland*, 54 Ind. 578.

Having thus arrived at the conclusion that upon the facts found the purchase of the land was not in itself impeachable, we need not consider the proposition, advanced and much debated in the briefs, that the plaintiff's proceeding to set it aside has been so long deferred as to bring it within the rule applicable to stale claims.

It was found by the court that during the continuance of Mr. Levering's agency and management of Mrs. Rochester's affairs, he attended to procuring insurance against loss by fire upon her property. He was at the same time the agent of the Ætna Fire Insurance Company, and from year to year, or as insurance was deemed necessary, policies of insurance were written by him upon her property, and the amount of premiums thus accruing was charged against her in his account. Several hundred dollars was in this manner charged against her, and in taking the account the learned judge at *nisi prius* allowed for the items thus charged.

It is now insisted that because the agent of the insurance company was also the agent of Mrs. Rochester, the policies

issued by him as agent to cover her property against loss were void, that they afforded no protection, and that the account for premiums paid should have been disallowed. *New York Central Ins. Co.* v. *National Protection Ins. Co.*, 14 N. Y. 85.

It is found by the court that while it was not known to the insurance company that Mr. Levering was the agent of Mrs. Rochester in effecting the insurance, it was stated in his reports made to the company that the property insured was controlled in his office. Insurance so effected would at the most be only voidable, depending upon the relation of the agent of the company to the property; the interest and authority which he had in respect of its management, and the knowledge possessed by the company of such relation and authority. That the insurance company was informed that the property insured was controlled by its agent, or in his office, was presumptively sufficient to indicate to it that the matter of securing indemnity by way of insurance was also under his control.

The policies having been permitted to stand with this information, we have no doubt they would have been enforceable against the company. At all events, as the policies were at the utmost only voidable, upon the return of the premiums paid, we can not presume that they would have been avoided in case of loss, and by indulging such presumption deny the appellee's right to be reimbursed for the premiums paid.

The next question presented for consideration relates to the right of the appellee to receive compensation for services while conducting the business of Mrs. Rochester.

It is found by the court that during the continuance of the agency various items, amounting in the aggregate to about three thousand dollars, were charged in the account against Mrs. Rochester for services in attending to her business.

Concerning these charges the court made the following specific finding:

" That all of said charges for services are reasonable, and

that it was fully worth, substantially, more than the amounts so charged by said agents, and by said plaintiff as such agent, to do the work done by them as such agents, or by said plaintiff, as such sole agent."

The account for services was allowed by the court below. Fully recognizing the rule that where an agent has violated his trust, or has been guilty of fraud or gross neglect of duty, thereby imposing upon his principal the necessity of expensive litigation in order to secure his rights, the penalty for such fraudulent conduct or wilful violation of duty is the forfeiture of all compensation, yet this rule should never be applied to mere mistakes in the keeping of an account, or errors of judgment, or other omissions which do not amount to misconduct or gross and culpable neglect or disregard of duty. We are unable to discover anything in the facts of this case which demands the application of the rigorous rule contended for.

The only other objection made to the conclusions reached by the *nisi prius* court is in respect of the rate of interest allowed. It is contended that, in stating the account, interest at the rate of ten per cent. instead of six should have been charged against the agent for all sums found to have remained in his hands.

The findings state that appellee had possession of all appellant's moneys, securities and books of account, with authority to invest, reinvest and collect her moneys, and that she relied upon him to loan and collect the same; that during the agency of appellee, appellant's moneys, as received by him, were mixed with his own moneys and used in his business; that from the 1st of July, 1868, to the 1st of July, 1878, the current rate at which money was loaned, secured by first mortgage on real estate in Tippecanoe county, was ten per cent. per annum, interest payable yearly, the borrower to pay all expenses of making the loan, so as to net the owner of the money ten per cent. per annum.

While the manner of mixing and using the moneys be-

longing to his principal is not to be commended, it is nevertheless inferable from the accounts exhibited in the record and the general character of the dealings between the parties, as shown by the special findings, that for all the current expenses of herself and family and for all expenses incurred in maintaining her property, Mrs. Rochester relied upon her agent to respond with money as the occasion might require. This necessarily involved the keeping of money either of his own or of his principal always available. It may be inferred that the character of the business relation between Mrs. Rochester and her agent was such that it imposed upon the agent the entire responsibility of looking after her business, to such an extent that her entire time and thought could be and were devoted to rearing and educating her children, without further concern than to call or make drafts upon her agent as money was needed. Considering that her fortune was such as to involve the handling of the amount exhibited in the account stated, it may well be that the necessity for considerable sums was frequent. The amount on hand uninvested at any one time does not seem to have been large compared with the affairs under control. That investments were not more closely made, can not, under the circumstances, be imputed to such neglect as should charge the agent with the highest attainable rate of interest. Indeed, if any error at all was committed by the court below, it was in applying too rigorous a rule against the agent, by charging him with compound interest on all sums found to be in his hands as hereinafter stated.

We have thus disposed of all the errors assigned by the appellant. As there was a judgment against the appellee below, and inasmuch as he excepted to some of the conclusions of law stated, it is proper we should consider the cross errors assigned by him in this court, notwithstanding the conclusion so far reached on the errors assigned by the appellant. *Kammerling* v. *Armington*, 58 Ind. 384. The case is not

analogous to nor controlled by *Thomas* v. *Simmons*, 103 Ind. 538.

It was found that in the course of his agency the appellee had loaned four hundred and eighty-two dollars and eighty cents of the funds of his principal to one McBride, who was at the time in debt, but able to pay; that the money so loaned might have been collected if proper steps had been taken to that end, but that the appellee took no steps to collect it, and the amount was lost. This sum was charged against the appellee by the court below, and this is one of the grounds of complaint made by a cross error assigned.

The facts found justify the conclusion reached in that regard. It is apparent that the appellee had permitted himself to become so far involved in the affairs of McBride, who was known by him to have come into such financial stress that he could not with propriety neglect the debt due from him to his principal. We think, while he was not guilty of wilful default, he was chargeable with such supine negligence as made him properly liable. He was under an obligation, at least, to use the same diligence in behalf of his principal that he used in respect to his own affairs. This it is shown he did not do.

The next cross error assigned relates to the action of the court in charging the appellee with the amount of the Austin judgment, which was used by the appellee in paying for street improvements. Without rehearsing the facts, we think he has no just ground of complaint in that regard.

It is next complained, that the court erred in its sixth conclusion of law, the force of which set aside the transfer of certain lots conveyed by McBride to the appellee, and subsequently conveyed by him to Mrs. Rochester in liquidation of a debt due from McBride to her, the payment of which the appellee had assumed. The appellee had become so complicated with the affairs of McBride that he found it expedient to accept the conveyance of a number of lots, and to assume the payment of a loan of money belonging to Mrs.

Rochester v. Levering.

Rochester which he as agent had made to McBride, and which was secured by mortgage on the lots transferred by McBride to the appellee. This debt, so assumed and secured, the agent subsequently discharged by transferring some of the lots conveyed by McBride to him to Mrs. Rochester, the transfer of which was accepted in payment of the debt asssumed under his advice. They were found to be of much less value than the amount of the debt. Without further rehearsing the facts, it is sufficient to state that within the rules already referred to, governing dealings between principal and agent, we think the conclusion reached by the court was right.

The fourth cross error assigned, which relates to the seventh conclusion of law, is not insisted upon in the argument, and is therefore waived.

The next cross error assigned relates to the method adopted by the court in stating the account and charging interest on balances found to be in the appellee's hands.

The method adopted was to consolidate all the accounts, take the difference between the receipts and disbursements for the first current year as the first principal, upon which interest was computed for one year at six per cent., and this interest was carried into the account for the second year. At the end of the second year the account was to be balanced, and interest computed on the balance and carried into the account for the third year, and so on down through each year to the end of the current year, in which the plaintiff ceased to be agent. From thence down to the date of the taking of the final account, interest was computed with annual rests at six per cent. Upon the facts as they appear, and in the absence of the evidence, there is nothing before us which authorizes us to say this was wrong.

Without a further rehearsal of the facts, this much may be said, while the method adopted by the court in stating the account may have resulted in some apparent hardship to the appellee, the impression comes irresistibly from the whole

record that he allowed his accounts to come into such a state of confusion and irregularity as must preclude any ground of complaint on his part, even though the court, in unravelling the tangled skein, felt obliged to cast some doubts in respect of interest in favor of his adversary.

Under section 577, R. S. 1881, it was right that the judgment should have been rendered without relief from valuation or appraisement laws. We do not forget that some of the items which went into the account were for property purchased, but the whole was properly treated as money paid into the agent's hands for the property as it should have been paid for at the time the property was purchased, and as it should have gone into the account if the account had been properly kept. It was, in the consideration of the court, a trust fund, treated as though it was actually received at the time and in the manner it should have been received.

There was no such ambiguity or inconsistency in the special finding of facts as made the granting of a venire de novo proper, nor can we say, in the absence of the evidence, that the motion for a new trial was not properly overruled.

Upon the fullest examination of the whole record, and a careful consideration of all the points made on both sides, we are persuaded that justice was substantially accomplished, and that it would be impossible to arrive at a better result than that already reached. As we find no error, the judgment is affirmed, at the appellant's costs.

