By the Court.
Plaintiff in error, who was plaintiff below, brought an action against the executors of the late Charles W. Baker, an attorney at law, practising in Cincinnati. The action was in form similar to the old action for money had and received, plaintiff claiming that the decedent had been unjustly enriched at her expense.
On October 31, 1912, she had entered into a contract with Charles W. Baker, and, on that day paid *126 to him $4000, as payment in advance for services in an action for divorce which had theretofore been filed against her by her husband, Charles Boldt. The plaintiff voluntarily dismissed the divorce case on August 18, 1913.
Her claim for relief is based on two contentions.
The first is that at the time of the making of said agreement the relation of attorney and client existed between her and said Baker, and that the exaction of said payment was exorbitant and unreasonable, but that this was unknown to her and she relied upon the good faith of her said attorney. She asks that there be returned to her the sum of $4000, less reasonable compensation for the services rendered by Baker in the divorce case, which she sets at $250, leaving a balance of $3750 claimed by her.
The second contention is that at the time she employed Mr. Baker in the divorce case it was an implied condition of said advance payment of $4000 that said case would be tried, and not dismissed without trial by plaintiff in the divorce case. $he says that the divorce case never came to trial, but, on the contrary, plaintiff therein voluntarily,, and without any procurement on the part of said Charles W. Baker, did, on August 18, 1913, dismiss said case without prejudice to another action. By reason of this there was a failure on the part of Baker to perform the services that were within the contemplation of the parties at the time the contract was made, and that she is entitled as a matter of law to the return to her of that portion of the fee to be earned by services that were to have been rendered, but, which, in fact, never were performed.
*127 The answer of the defendants contains recitals of fact and averments which are allegations of evidence, but the answer denies that the relation of attorney and client existed between the decedent and the plaintiff at the time of the employment in the divorce suit and the payment alleged in the petition. It also alleges that decedent rendered such legal services for the plaintiff in the divorce case as were required by the contract of employment.
The case was tried to a jury in the court of common pleas, and, at the conclusion of the evidence of plaintiff, the court directed the jury to return a verdict in favor of the defendants. Judgment was entered on the verdict and plaintiff prosecutes error.
’ The defendants at the outset make the contention that the plaintiff could not maintain an action at law, but was first required to proceed in equity to set aside the agreement. That this doctrine, applicable to deeds to real estate and to releases in personal injury cases, is not of universal application is settled in this state by the case of Taylor v. Brown et al., 92 Ohio St., 287, 299. Where the remedy at law is adequate and full, it may be had without a judicial rescission.
We will, therefore, take up the two grounds on which plaintiff 'bases her claim to recovery.
The record shows that on November 8, 1909, plaintiff employed Baker as her attorney to bring an action against her husband for alimony in the court of insolvency of Hamilton county, Ohio. From a decree in her favor, the defendant appealed to the circuit court, and while the suit was pending *128 the parties made a contract of separation, and adjusted their financial matters, and this contract was incorporated in the final decree of the circuit court, entered December 14, 1911. Under the'terms of this agreement, Mrs. Boldt was to pay her own attorney’s fees, and she did pay decedent a check for $3500 that she received by the contract and decree. There is no evidence of any further employment or continuance of the relation of attorney and client between Baker and Mrs. Boldt prior to the agreement here in question, except such as is furnished by the following.
In August, 1912, there was a reconciliation between Mrs. Boldt and her husband, and, on August 19, 1912, a letter addressed to Charles W. Baker and signed by Charles Boldt was delivered to Mr. Baker’s office by Mrs. Boldt, wherein Mr. Boldt said that a reconciliation had been effected, and that he had agreed to make certain payments.
On October 2, 1912, Mr. Baker sent to Mrs. Boldt a bill for $1000 for professional services, and, on October 11, caused a letter to be written to her calling her attention to the fact that the bill was unpaid and requesting her to pay.
The domestic felicity of the Boldts terminated shortly after the reconciliation, and, on October 29, Charles Boldt brought an action for divorce in the court of common pleas. Two days later, Mrs. Boldt entered into a written contract with Charles W. Baker, which is as follows:
“Mrs. Amalia W. Boldt has this day employed C. W. Baker as her attorney in the case of Boldt v. Boldt, No. 151955, Court of Common Pleas.
*129 “She now pays him for same, and for amount One Thousand ($1000.00) Dollars heretofore due, Five Thousand ($5000.00) Dollars. ■
“If the court in case No. 151955, makes any allowance for fees such allowances are to be turned over by Mr. Baker to her.
“Charles W. Baker,
“Amalia M. Boldt.”
She then paid the sum therein stipulated. Baker then took charge of plaintiff’s case, filed an answer and took depositions. At the expiration of nine months Charles Boldt dismissed his petition without prejudice. Mrs. Boldt testifies that she was not aware of the dismissal of the action until after the death of Mr. Baker on April 14, 1917.
The relation of attorney and client imposes upon the attorney a duty of trust and confidence towards his client in any dealings had between them while the relation exists. The law requires that all dealings between them shall be characterized by the utmost fairness and good faith. 6 Corpus Juris, page 686; 2 Thornton on Attorneys, Sections 428-430, and Weeks on Attorneys, Sections 268, 276. ¡
Prior to assuming the relation of attorney and client a lawyer may bargain for his services with one proposing to employ him and may deal with him at arm’s length. (Carlton v. Dustin, 10 W. L. B., 294.) If the relation of attorney and client which had once existed between the parties in the conduct of the alimony suit had ended, and the parties no longer stood in their former relations to *130 each other, Baker could legally enter into such a contract on October 31, 1912, as he deemed advantageous. As a general rule, and in the absence of special circumstances to the contrary, employment of an attorney to prosecute an alimony case presumptively terminates upon the entering of a final decree. Reynolds v. Reynolds, 12 Ohio App., 63, and Newkirk v. Stevens, 152 N. C., 498, and 1 Thornton on Attorneys, Section 142.
The termination of the litigation, while it ends the power of the attorney to bind the client, does not necessarily end the duty of the attorney in dealing' with the client. There are cases which show that the doctrine of uberrima fides may outlast the relationship itself, and that the rule should be applied so long as the influence arising from the relationship is proved to exist. See 6 Corpus Juris, 689; 1 Perry on Trusts (6 ed.), Section 202, and Hill, Jr., v. Hall et al., 191 Mass., 253.
As shown by the case last mentioned, this doctrine is usually applied in connection with dealings between the attorney and the client concerning the fruits of the litigation.
In the case at bar there is no evidence that the influence of the attorney persisted subsequent to the termination of the alimony suit in any other sense than that Mrs. Boldt had the confidence in Baker which a client has in the capacity of the lawyer who successfully conducts his litigation.
Counsel for plaintiff in error have stressed the argument that the employment of Mr. Baker was for the “marital troubles” of Mrs. Boldt, of which the alimony suit was only part. The basis for this is a phrase in the cross-examination of Charles *131 Boldt, occurring in the question of counsel for plaintiff in error directed toward the time of Mr. Baker’s employment. Charles Boldt had no knowledge other than hearsay of what the employment of Mr. Baker was, nor does his testimony fairly construed.show that he intended to testify as to the terms of her contract. All that the record fairly shows in connection with his employment in the alimony case is that he was Mrs. Boldt’s counsel in that suit. There is no evidence that he was first employed to represent her in any other marital affairs than that. What then is the effect of the bill by Baker and the letter by Boldt ? The bill does not recite the services which are the basis of the charge, and there is no presumption of law that they were subsequent to the rendition of the alimony decree. One may owe a bill for legal services to an attorney, whose services and whose employment have entirely ceased, nor does the fact that the bill remains unpaid tend to establish that there is any 'influence still existing. The contention of the plaintiff in error, carried to its legal conclusion, would subject every attorney re-employed by a client, to a suit in which he would have the burden of proof to show affirmatively that the new contract of employment was fair.
The letter by Charles Boldt to Mr. Baker shows that Mrs. Boldt desired Baker to know of the new promises by her husband. It falls short of establishing that Baker thereby charged himself with new duties and disabilities. It must be remembered that the letter was written to him, and not by him. If he did not regard himself as attorney for Mrs. Boldt at that time, he was not called upon to an *132 swer the letter of Mr. Boldt. No authority has been found justifying any presumption that the influence presumably gained «over a client by an attorney in litigation survives the termination of the services performed for a period of ten months in a transaction not about the fruits of the original litigation. There was no evidence that Baker and Mrs. Boldt occupied the relation of attorney and client on October 31, prior to the making of the written contract, and the burden of proof of fairness does not devolve upon the administrators of the attorney, now deceased.
The argument of the plaintiff in error as to the construction of the contract is as follows:
The contract is for services to be rendered regarding a particular subject-matter. The subject-matter has ceased to exist without fault of either party, and, therefore, performance is excused. The argument is illustrated by examples of painting a portrait of a particular person, contracts of marriage, contracts for repairing a particular building or vessel, for services of a specific person, for purchase of a specified crop from a specified tract of land. In the enumerated instances, if the person whose portrait is to be painted die, if the engaged person die before marriage, if the chattel perish, if the person who is to render services die, the contract is at an end and need not be performed. The continued existence of the thing is an implied condition of performance. See Taylor v. Caldwell, 3 B. & S., 826, and 6 Ruling Case Law, page 1005.
The agreement of the parties in this case shows that “Mrs. Amalia W. Boldt has this day employed C. W. Baker as her attorney in the case of Boldt *133 v. Boldt, No. 151955, Court of Common Pleas. She now pays him for same * * By the terms of the agreement, Baker was to perform all professional services required on her behalf in that case with reasonable skill and diligence. The parties were contracting with reference to a pending lawsuit. Just what might be required before its termination no one could forecast with certainty. The litigation might have required a great amount of labor, or it might have been completed after a short time, and with comparatively little effort. The services contemplated the termination of the lawsuit and not its continued existence. Such is the intention of the parties as shown, by the agreement itself, and, if it does not correctly express their agreement, relief should be had by reformation and not by construction contrary to the meaning of the words used.
Unlike the cases used in illustration of the argument for plaintiff in error, the contract is aleatory in its nature. When Mrs. Boldt had made the payment agreed upon, the risk as to the amount of work that would be required to perform it was upon Baker. It never could be completely performed until the lawsuit ended. In this respect it bears a closer resemblance to a contract to support a person during life, such as the case of Drefahl v. Rabe, 132 Ia., 563. While such an agreement relates to the life of an existing person it is only fully performed when such person dies. The occurrence of the death before the parties expected would not require a repayment of any part of the consideration. The party to a contract who gets what he bargained for may not complain of failure of con *134 sideration, though the consideration may have been more easily furnished than he anticipated. Mrs. Boldt must have known that the plaintiff could dismiss the action for divorce. A case further illustrating’one of the principles here involved is Woodward v. Cowing, 13 Mass., 216. There the plaintiff paid money to an officer of a privateer for a one-fourth share of the prize money that he might make during the cruise on which he was then bound. A few days later, a treaty of peace between the United States and Great Britain required a cessation of the cruise. The court held:
“Where money has been paid upon a consideration, which has failed, it may certainly be recovered back by the party who shall have paid it. But such, in our opinion, was not the case before us. There were many risks, equally known to the parties, and which must be presumed to have been considered by them, when making their contract. The return of peace must have been one. The plaintiff purchased a chance to obtain money by captures from an existing enemy. The government of their country annihilated that chance, by making such captures unlawful. We have no hesitation in saying that the defendant has a right to retain the money paid him.”
If the lawyer had been disabled from performing the'-services agreed upon, and, therefore, did not perform, he could not retain the entire fee which had been paid in advance. Baylor v. Morrison, 2 Bibb (Ky.), 103; Callahan v. Shotwell, 60 Mo., 398; Baird v. Ratcliff, 10 Tex., 81, and Coe v. Smith, Admr., 4 Ind., 79.
*135 Mr. Baker represented Mrs. Boldt from the time of his employment until the case was terminated. He completed the task for which he was employed. The record shows, therefore, that there was no prevention of performance on his part by any unforeseen contingency, but that he performed the agreement in accordance with its terms.
The conduct of the trial court in directing a verdict in favor of the defendants was not erroneous.

Judgment affirmed.

Shohl, P. J., Hamilton and Cushing, JJ., concur.