## POMEROY ET AL. *v.* WIMER.

[No. 20,799. Filed June 20, 1906. Rehearing denied December 11, 1906.]

1. TRIAL.—*Instructions.*—*Legal Effect of Undisputed Facts.*— *When Question for Jury.*—An instruction setting out the facts constituting the business relations between plaintiff and defendant should not state the legal effect of such acts where different inferences could reasonably be drawn therefrom, such deduction being for the jury. p. 445.

Pomeroy *v.* Wimer—167 Ind. 440.

2.  PRINCIPAL AND AGENT.—*Agents' Profits.—When Belong to Principal.*—Where plaintiff employed defendant as his agent to sell his land, and, after advertising same, defendant failed to make a sale, plaintiff telling defendant after the failure that if he got hold of a piece of ground to sell on which plaintiff could apply his land as part pay to let him know; and defendant offered plaintiff a tract which he and others held for speculative purposes, telling him all about the owners and their profits before the completion of the sale, the plaintiff cannot, after effecting the sale, recover from defendant and such others their profits in the transaction on the theory that defendant was his agent, and that the others knew such fact before such sale.   pp. 446, 452.

3.  SAME.—*Agent Buying from, or Selling to, Himself.*—A confidential agent with power to buy and sell may not, without a full disclosure to his principal, buy from, nor sell to himself. pp. 447, 450.

4.  SAME.—*Powers of Agents.—Profits.*—Where an alleged agent had no power of sale, and his employment consisted solely of introducing his principal to a proposed purchaser, the principal making or refusing to contract without let or hindrance, such alleged agent cannot, as a matter of law, be held to bear such relation to the principal as that his profits derived from the sale effected shall belong to said principal.   p. 448.

5.  APPEAL AND ERROR.—*Rehearing.—New Questions.*—Parties, on appeal, cannot raise new questions on a petition for a rehearing.   p. 449.

6.  SAME.—*Briefs.*—It is not necessary for appellant in his brief to set out causes in his motion for a new trial which are abandoned.   p. 449.

7.  SAME.—*Briefs.—Arrangement.*—Where the motion for a new trial and the instructions complained of are set out in a convenient place in the brief and an honest effort is shown to comply with the Supreme Court rules, such brief will be held sufficient.   p. 450.

8.  PRINCIPAL AND AGENT.—*Serving Two Masters.*—Where an agent's sole duty consists in bringing parties together, and they reserve the exclusive power to contract, such agent may serve both and be entitled to compensation from both, regardless of their knowledge of his relations.   p. 451.

9.  SAME.—*Agent's Sale to Principal.*—Where an agent's sole duty is to introduce his principal to a proposed purchaser, such agent, after disclosure of his interest, may sell directly to such principal, and be entitled also to his commission as agent. p. 452.

From Dekalb Circuit Court; *C. W. Watkins,* Special Judge.

Action by John Wimer against James E. Pomeroy and others. From a judgment for plaintiff, defendants appeal. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*E. V. Harris, D. M. Link* and *Marshall, McNagny & Clugston,* for appellants.

*P. V. Hoffman* and *Brown & West,* for appellee.

HADLEY, J.—In the spring of 1902 appellee owned twenty-one acres of land near the city of Auburn, known as the Fair Grounds. Appellant Pomeroy was a real estate broker located in Auburn. At the time referred to Wimer authorized Pomeroy to sell the Fair Grounds for $1,000, and directed him to advertise the property in the local papers at his (Wimer's) expense. The price was subsequently reduced to $750, but in August or September following, no sale having been effected, it was determined by the parties to discontinue the advertisement. Nothing was said at the time as to whether the agency should close or continue, but on separating Wimer said to Pomeroy: "If you get hold of a piece of ground to sell, for which I can turn the Fair Grounds as part pay, let me know." Appellant Esselburn, a timber buyer, having come across a farm of seventy-five acres, belonging to the Sommers heirs, that was being offered by Michael Boland, as agent, for $30 per acre, and having on it much valuable timber, which Esselburn desired, came to an agreement with Pomeroy that they would buy an option on the farm for thirty days at $30 per acre, and if they failed to sell it before the expiration of the option they would jointly raise the money and pay for it, and take chances on making a profitable sale afterward.

On December 9, pursuant to the agreement, Pomeroy, in his individual name, "as agent of unnamed principal,"

closed the option contract, calling for a warranty deed for the land upon the payment of the balance of $30 per acre, within thirty days, and a forfeiture of the amount paid if the balance was not paid within that time. Appellant Weeks was to have an equal share of the profits if he succeeded in making a sale within the life of the option. Appellant Weeks had never seen the farm, but upon the request of Pomeroy, called upon Wimer, and gave him a description of the farm, as it had been given to him, and arranged to accompany Wimer out to see it. Wimer took a spade, went over the land, dug into the soil at many places, examined the timber, and within a few days sent out a timber expert to estimate its value, and then with Weeks went to Pomeroy's office December 13 and entered into a written agreement with Pomeroy for an exchange of the Fair Grounds for the Sommers farm, Wimer agreeing to give $2,400 cash boot, and Pomeroy at the time executing the agreement as "agent of unnamed principal," and explaining to Wimer that he and others were holding the land for speculative purposes. Deeds were executed, and exchanged January 12, 1903, in accordance with the contract, but before the exchange Wimer was fully informed as to the beneficiaries represented by Pomeroy and of the amount of their profits in the trade, and made no objection. In May, 1903, Wimer brought this action for damages, on the theory that Pomeroy was his agent to sell or exchange the Fair Grounds for a larger farm, and, having been instrumental in bringing about such a trade, while acting as agent, the plaintiff was entitled to the Sommers farm at the price his agent paid for it, and appellants Weeks and Esselburn, having knowledge of such agency, and having shared equally with Pomeroy in the profits of the trade, were alike and equally liable to account to him. Issues were joined by a general denial and plea of ratification. Verdict and judgment for appellee for $886.20.

Appellants insist that they were prevented from having a fair trial by an erroneous instruction which the court gave to the jury of its own motion. It was in part as follows: "No. 2. In this case, the undisputed facts show that the defendant James E. Pomeroy was the agent of the plaintiff for the purpose of exchanging his twenty-one acres of land, known as the Fair Grounds, for a larger piece of land, said plaintiff to pay the difference, and said Pomeroy to receive a reasonable commission for his services in that behalf. It is also undisputed that, while he was such agent, the defendants Pomeroy and Esselburn discovered that Michael Boland, as agent of the Sommers heirs, had a tract of land consisting of seventy-five and forty-six hundredths acres for sale at the cash price of $30 per acre, and that said Esselburn and Pomeroy procured a written contract or option from said Boland in the name of said Boland, as agent and attorney in fact for said Sommers heirs, and of the defendant Pomeroy, as agent for unnamed principals. * * * It is also undisputed that on December 13, 1902, after obtaining said option, the defendant Pomeroy executed a contract with the plaintiff in which said Pomeroy appeared as agent of unnamed principals, in which contract it was stated that whereas said Pomeroy had contracted with Michael Boland as agent for the Sommers heirs for the land described in said option contract, that said Wimer was to take said land at the agreed price of $3,500, his twenty-one acres to be taken at the price of $1,100, and the balance to be paid in cash. It is also undisputed that said contract was taken for the benefit of said Pomeroy, Weeks and Esselburn; that each was to have an undivided one-third of the profits made upon said option contract; and it is also undisputed that when said defendant entered into said contract with said Wimer for the sale of said land that he was holding said twenty-one acres as agent of the plaintiff for sale under the terms heretofore stated. * * * It is also undisputed that said

defendants divided said $135.20, over and above said purchase price from said Boland, among themselves; and that they also divided said .twenty-one acres of land, each taking one-third thereof, or seven acres; and that said Pomeroy, before the commencement of this action, sold his seven acres of said land to Andrew Marsh. These facts being undisputed, the burden is on the defendants to show, by a preponderance of the evidence, that at the time the plaintiff entered into said contract with said Pomeroy, at the time he received his deed and paid the purchase money for the land received from Boland and conveyed his twenty-one acres to the defendant Pomeroy, he had full knowledge of all of the facts in relation to said sale, and that the land of said Sommers heirs was of the fair value of $3,500; and that said plaintiff knew, at the time he entered into said contract, and at the time he accepted said deed from said Pomeroy for said Sommers land, and .conveyed his land to said Pomeroy, all of the facts in connection with the transaction, including the fact that the defendants held an option on said land from which they could be released by forfeiting the $5 paid, in case said plaintiff did not take said land within the time provided in said option or the extension thereof."

As shown by the record, there were but two witnesses introduced, and their testimony related to matters wholly immaterial. The plaintiff did not testify, nor give his deposition, though it appears that his deposition was taken and left with his attorney. The evidence, aside from the two witnesses mentioned above, was composed solely of the contracts, deeds, and record of deeds noted in the above introductory facts, and the examination of each of the defendants, taken by the plaintiff before trial under §517 Burns 1901, §509 R. S. 1881. So the court was not wrong in stating to the jury that the facts relating to Pomeroy's agency were undisputed, so far as affected by direct evidence. But it was undoubtedly in error

in stating to the jury what those facts proved. The fundamental fact in the case for the jury to decide was the question of agency, and its character, between the plaintiff and defendant Pomeroy, in the exchange of the Fair Grounds for the Sommers farm, to be determined from the evidence under proper instructions from the court.

The complaint charges Pomeroy with being the plaintiff's agent, and his codefendants with knowledge. The defendants each deny such relation and challenge the proof. The only direct evidence bearing upon such agency arises from the testimony of Pomeroy himself; and, at the expense of repetition, for convenience we reproduce it here. Being a real estate broker in the city of Auburn, appellee, Wimer, in the spring of 1902, requested Pomeroy to find a purchaser for the Fair Grounds for $1,000, and directed its advertisement in the local papers at his (Wimer's) expense. Subsequently Wimer reduced the price to $750, but in the summer following, no sale having been effected, it was mutually agreed to discontinue the advertisement. Nothing was said at the time whether the agency should close or continue, but on separating Wimer said to Pomeroy: "If you get hold of a piece of ground to sell, for which I can turn the Fair Grounds as part pay, let me know." He further testified: "My understanding [from the foregoing remark] was that if I found a piece of ground for sale that he could buy on terms that were satisfactory to him, and he could turn in the Fair Grounds as part pay, that he would pay me for turning in the Fair Grounds, and as to the other real estate, he was to determine for himself whether it was a satisfactory price." Having, in the autumn following, acquired, with Esselburn, the Sommers farm, in his first interview with Wimer, Pomeroy told him that he and others controlled the farm; that they were holding it for speculative purposes; that the price on it was $3,500; that they would sell to the first one who would

pay their price; that he had never seen the land, and knew only what others told him about it; thought it would suit the plaintiff, and that he could put in the Fair Grounds at $1,000. At the time of the interview Wimer had personally inspected the farm; had examined its soil in many places, and inspected the growing timber, and had taken the opinion of a timber expert as to its value. In the written agreement between Wimer and Pomeroy, "as agent of unnamed principal," is the language, "the first party (Pomeroy), as such agent, does hereby agree to sell to said second party said real estate * * * for the sum of $3,500," as follows: $2,400 cash, and conveyance of the Fair Grounds. Before the exchange of deeds Wimer was fully informed as to the persons interested in the Sommers farm, the sum paid therefor, and amount of their profits, but asserted that he was satisfied with his bargain. There was no written contract, no agreement as to fee or commission for securing sale or trade, no individual memorandum of agency, no power of sale, purchase, or exchange. All these facts and circumstances, and the natural inferences arising therefrom, were entitled to be considered in determining the true character and scope of Pomeroy's agency for appellee.

The actual relation here shown between the appellee and appellant Pomeroy is so limited and circumscribed as to amount to nothing more than a proposition on behalf of appellee that if Pomeroy would produce a purchaser for his Fair Grounds, or find another piece of real estate for which he could trade the Fair Grounds, he would impliedly be entitled to a reasonable fee or commission for his services. If this was in any sense an agency, it falls far short of being such a one as is governed by the rule the jury was directed, in the instruction, to apply. We agree that it is firmly settled that a confidential agent, with power

3. to sell or to buy can neither buy from himself nor sell to himself without the approval of the principal

after full information of the facts relating to the transaction. *Rochester* v. *Levering* (1886), 104 Ind. 562, 567; *Fountain Coal Co.* v. *Phelps* (1884), 95 Ind. 271; Mechem, Agency, §455.

But the evidence does not show this to be a case of that kind. (Here the business was in no sense confidential.) The service of bringing a buyer or trader, if performed by a stranger, would no doubt have been as acceptable to Wimer. (Pomeroy had no power to sell nor to trade the Fair Grounds; did not bind himself to find a buyer or a trader, and in fact did not sell or trade it.) (He acted for Wimer in nothing, at any time, except in announcing his price on the Fair Grounds, and his readiness to trade it for other property, and in thus soliciting a customer. No one acted for appellee in trading for the Sommers farm. He was his own principal and agent. He went with Weeks to see the land, examined it for himself, tested its soil, procured an expert estimate of the value of the timber, and inquired of its value neither from Weeks nor Pomeroy. He determined that for himself, from the opinion he had from others. And before the deeds were delivered, and after being fully informed of the cost of the Sommers land and the amount of profits the purchasers were making by the trade, Wimer announced himself as satisfied with his bargain, and proceeded with the exchange of deeds. There is no pretense in this court that he paid more for the land than it was worth, or that he was in any way overreached. In the view most favorable to appellee, it must be said to be very clear, under the facts, that the true character of Pomeroy's relation to the transactions involved was a question for the jury, and the instruction therefore erroneous. There are other objections to the instruction that we leave unconsidered.

Judgment reversed, with instructions to grant appellants a new trial.

## ON PETITION FOR REHEARING.

HADLEY, J.—The first point in appellee's petition for rehearing cannot be considered here, because it was not made a point, nor even suggested in his original brief. Elliott, App. Proc., §557.

The second presents a complaint that we did not, in the former opinion, decide the question he made as to the sufficiency of the appellants' brief. The question alluded to is that appellants' motion for a new trial and the instructions given to the jury could not properly be considered in this appeal, for the reason that they were neither in substance nor in full set forth in appellants' original brief, as required by rule twenty-two of this court.

With respect to the motion for a new trial it may be said that it appears from the record that a joint and separate motion was overruled, and upon which ruling a joint and separate assignment is made in this court, the defenses not being identical. Appellants in their brief, under the heading of "Errors Relied upon for Reversal," state: "Separate assignments of error have been made by each appellant assigning one error only, viz., that the court erred in overruling his motion for a new trial. Some of the causes for a new trial are available to each of the appellants and some to one of them only. To avoid confusion we set forth separately the errors relied upon by each appellant. The appellant Esselburn relies upon the following errors for a reversal as to him: (1) The verdict of the jury against him is not sustained by sufficient evidence. (2) The court erred in giving to the jury instruction two," and so on, specifying, in five additional items, error in like terms as to instructions numbered three, eight, twelve, fifteen, and eighteen. Then follows separate, similar statements as to appellants Weeks and Pomeroy—each of the three selecting from his motion for a new trial, which con-

tained twenty reasons or assignments of error, and setting forth in brief only such of said reasons as he relies on for a reversal, thus leaving the reasons for a new trial not relied upon, unstated and unnoticed in his brief. In the body of points and authorities, and in connection with the points made against them, the instructions complained of are set forth in full.

The rules of this court do not define nor limit the particular matter to be set out under the respective subjects as enumerated in rule twenty-two. What the rules imperatively demand is that the matter called for by rule twenty-two, as a means of information to the judges not having the record, shall be supplied in the briefs. The precise order is not important, provided the parts be assigned in reasonably convenient and logical positions. The omission from the brief of those parts of the motion for a new trial that had been abandoned as constituting error was the proper thing to do. Such dead parts would occupy the time of the judges to no purpose, and are therefore better out of the brief than in it. While so much of the motion for a new trial as presents the error relied on, and

7. the full text of the instructions complained of, are set forth in appellants' brief under subject heads, perhaps not usually adopted, yet the positions selected are convenient, and the effort evinces an honest endeavor to comply with the rule. It will, therefore, be held sufficient.

The further complaint of appellee is that in the principal opinion we made a wrong application of the law to the facts proved in this case. The controlling question is one of agency. The character of the agency must

3. determine the legal rules that govern it. It is firmly settled that an agent with the discretionary power to sell or exchange must exercise that discretion for the sole benefit of his principal. In such cases there is an implied confidence, and reliance on the judgment and skill of the agent, which enters into the essence of the employ-

ment, and the latter will not be permitted to deal with himself, or accept like employment from the other party, without the fullest disclosures and consent of his employer or employers. *Rochester* v. *Levering* (1886), 104 Ind. 562, 568; *Cannell* v. *Smith* (1891), 142 Pa. St. 25, 21 Atl. 793, 12 L. R. A. 295; *Empire State Ins. Co.* v. *American Cent. Ins. Co.* (1893), 138 N. Y. 446, 34 N. E. 200.

But where an agent has no discretion or power to sell or exchange, and no authority beyond bringing the buyer and seller together to make their own bargain, cases 8. where the agent merely engages to find a purchaser or trader, on such terms as may be agreed upon by the parties when they meet, and where the terms of the employment involve no element of confidence or reliance upon the agent in determining the propriety of making a contract, or in fixing the terms thereof, the great weight of authority holds that such an agent may act for both parties in bringing them together, and be entitled to compensation from both, whether or not the parties severally knew that he was acting for both. *Alexander* v. *Northwestern Christian University* (1877), 57 Ind. 466, 479; *Cox* v. *Haun* (1891), 127 Ind. 325; *Rupp* v. *Sampson* (1860), 82 Mass. 398, 401, 77 Am. Dec. 416; *Jarvis* v. *Schaefer* (1887), 105 N. Y. 289, 11 N. E. 634; *Herman* v. *Martineau* (1853), 1 Wis. *151, 60 Am. Dec. 368; Tiffany, Agency, p. 419; 1 Clark & Skyles, Agency, §414; 2 Clark & Skyles, Agency, §781; *Knauss* v. *Krueger Brewing Co.* (1894), 142 N. Y. 70, 36 N. E. 867. In the last case cited the learned judge illustrated the question under consideration thus: "If A is employed by B to find him a purchaser for his house upon terms and conditions to be determined by B when he meets the purchaser, I can see nothing improper or inconsistent with any duty he owes B for A to accept an employment from C to find one who will sell his house to C upon terms which they may agree upon when they meet. And there is no violation of duty

in such case in agreeing for commissions from each party upon a bargain being struck, or in failing to notify each party of his employment by the other."

If an agent, under the limitations and terms above stated, may act for both parties, and recover compensation from both, there can be no sound reason why one 9. who engages, under similar restrictions, to find a purchaser or trader for another may not himself become the purchaser or trader, as well as a stranger, provided that in doing so he violates no obligation, and fully discloses to his employer his personal relations to the subject-matter. The fact that he has undertaken to find a purchaser for the property does not impress upon the agent any particular incapacity to buy or trade for the property himself, nor make a trade with him less profitable to his employer. And if the principal, with full knowledge of all the material facts concerning the transaction, enters into negotiations with him and consummates a trade the transaction is valid, and the agent entitled to his compensation. *Rochester* v. *Levering, supra; Stewart* v. *Mather* (1873), 32 Wis. 344, 355; 1 White & Tudor's Leading Cases in Equity, Part 1, p. 219; *Burke* v. *Bours* (1893), 98 Cal. 171, 32 Pac. 980; 1 Clark & Skyles, Agency, §413; 1 Am. and Eng. Ency. Law (2d ed.), 1081. In the case of *Stewart* v. *Mather, supra,* it is said: "Where the broker merely engages to find a purchaser at such price as may be agreed upon, if he presents himself as such purchaser, and the seller, with full knowledge of that fact, so receives and enters into negotiations with him, and a sale is consummated, the broker may recover his commissions."

What then is the nature of the commission, the appointment in this case? Its scope is found within the limits of these three words, "Let me know." As shown by 2. the facts stated in the principal opinion, Wimer and Pomeroy, having decided to give up the effort to sell the Fair Grounds for cash, as they separated, Wimer

said to Pomeroy: "If you get hold of a piece of ground to sell, for which I can turn the Fair Grounds as part pay, let me know." Other evidence in the case tended to qualify the remark as follows: "If you get hold of a piece of ground to sell, that is suitable for raising potatoes and onions, and for which I can put in the Fair Grounds as part pay, let me know, and I will do what is right with you." Note the character of the commission: "If you get hold of a piece of land"—as agent or owner, which? Or how did, or how could the source of title make any difference to Wimer, if he got what was satisfactory to him. And the instruction was, not to go ahead and make a trade or take an option, but "let me know." In other words, all that Wimer desired or authorized Pomeroy to do in the matter was to let him know if he (Pomeroy) got hold of such a farm as Wimer could trade for on the terms proposed. Pomeroy made no response to Wimer's request. He did not say whether he would, or would not, let him know if he got hold of a desirable farm. Certain it is from the evidence that Pomeroy did not promise, or place himself under any obligations to do so.

Now what was done under this appointment, if it may be called such? The parties met in Pomeroy's office. Wimer, in company with appellant Weeks, had seen the land; had fully examined the quality of the soil and had a report from an expert as to the value of the timber. Pomeroy, at the time of their first meeting, had never seen the land, and informed Wimer that he and others were holding it for speculative purposes, but would trade it to him for his Fair Grounds and $2,400 cash. A bargain was struck and a written contract executed on this basis. Two weeks later when the parties again met at Pomeroy's office, by appointment, to exchange the deeds, and before the exchange, Pomeroy fully informed Wimer that he and his coäppellants were the owners of the land, what they paid for it, and the amount of their profits on the contract basis.

After this information Wimer expressed himself as satisfied with the trade, prepared a deed conveying the Fair Grounds to these appellants, and proceeded with the exchange of conveyances in accordance with the previous contract.

Appellee makes no pretense that he was deceived or in any way overreached in the trade, or that the farm he got was worth less than he paid for it, and, as we understand it, relies wholly upon the technical disability of his agent to buy a farm and trade it to him at a profit. The transaction, as we have seen, was characterized with no discretion in the agent, no special confidence, no reliance upon the agent's judgment or skill, no authority to bind nor obligation to advise, made at arms length, on fair terms, with full knowledge of his adversary, and all material facts, and presents such a case as clearly made it error for the court to charge the jury, among other objectionable things, that it is "undisputed that when said defendant Pomeroy entered into said contract with said Wimer for the sale of said land he was holding said twenty-one acres as agent for the plaintiff for sale."

Petition for rehearing overruled.