## CARMICHAEL ET AL. *v.* LAVENGOOD.

[No. 16,802. Filed October 20, 1942.]

*John Kendall,* of Danville, *Ryan & Ryan,* of Frankfort, and *Telford B. Orbison* and *Robert C. Bulleit,* both of New Albany, for appellants.

*Charles S. Loy,* of Swayzee, *Robison & Robison,* of Frankfort, and *Arthur J. Jones,* of Indianapolis, for appellee.

BEDWELL, J.—The appellants, Otis T. Carmichael and William O. Mattern, partners doing business under the firm name and style of Carmichael, Mattern and Company, were licensed commissioned merchants engaged in business at the Union Stock Yards in Indianapolis, Indiana, and the appellee, Clarence Lavengood, was a farmer and stock raiser of Grant County, Indiana. The appellee recovered a judgment against the appellants in the sum of $1,000 in an action for alleged breach of warranty in connection with the purchase and sale of certain hogs.

The appellants are relying for reversal upon the overruling of their motion for a new trial. In such motion they assert that there was error in the assessment of the amount of recovery; that the verdict of the jury was not sustained by sufficient evidence; that the verdict of the jury was contrary to law, and that the court erred in the giving and in the refusal to give certain specified instructions.

The amended complaint of appellee, upon which the cause was tried, alleged, in substance, that appellee was a farmer engaged in the business of raising, feeding, and producing swine for slaughter, and that he made

provision to feed out for market 750 head of hogs during the summer of 1935. That on or about the 22nd day of June, 1935, he entered into a parol agreement with Carmichael, Mattern and Company to purchase and procure for him approximately 300 head of good healthy feeding hogs, weighing from 100 to 130 pounds, for which he agreed to pay the current market price for hogs of like kind, and in addition thereto, to pay the customary yardage and vaccination fees and expenses, and further agreed to pay to the appellants, Carmichael, Mattern and Company, the sum of 20 cents per head for each hog so purchased for him as compensation for their services.

The amended complaint further alleged that on the 26th day of June, 1935, the defendants procured and sold to the appellee 130 hogs and represented to him that they were good healthy feeding hogs for which he paid the costs and commission as agreed. That on the 28th day of June, 1935, as a further part performance of such agreement to purchase good healthy feeding hogs for plaintiff, the appellants obtained, sold, and delivered to the appellee 59 head of hogs and represented to the appellee that they were good healthy feeding hogs, and warranted and represented that said hogs were in all respects perfectly sound and healthy and suitable for the purpose for which the appellee was buying them, and that the appellee relied upon said representations and warranty and accepted the delivery of said 59 hogs on said contract and agreement and paid to the appellants the current market price, together with 20 cents per head for appellants' service, and paid the cost of yardage and vaccination.

It is further alleged that when appellee accepted the delivery of such lot of 59 hogs that they were not healthy and good feeding hogs, but they were diseased

and afflicted with a contagious and communicable disease; that the appellee in ignorance of the fact that the hogs were so diseased, and relying upon the statements of appellants, transported the same to his farm in Grant County, Indiana, where he had approximately 470 feeding hogs on full feed; that these diseased hogs transmitted the ailments with which they were afflicted to the healthy hogs owned by appellee, whereby all became sick and afflicted with like disease; that 87 of the hogs died. That appellee expended a large sum of money for veterinarian services and for medicine in care and treatment of his hogs; that many of the hogs that did not die lost in weight and quality and had to be sold at a sacrifice for immediate slaughter; that by reason of the premises there was a breach of said warranty of sale to appellee's damage in the sum of $10,000 for which he demanded judgment.

The evidence disclosed that on June 22, 1935, the appellee met the appellant, William O. Mattern, at the stockyards in Indianapolis and told him that he was in the market for 150 to 300 head of good feeding hogs. Appellee asked Mr. Mattern if he was in the habit of selling feeding hogs and Mr. Mattern said that he was. Appellee then asked Mr. Mattern what would be the chance to buy good feeding hogs there at the stockyards, and Mr. Mattern said that they were coming in and that they could get them for him. The appellee offered to pay 25 cents per hundred weight premium above the market price, but the appellant Mattern informed him such was in violation of the rules of the yards and that all he was permitted to do was to charge 20 cents a head commission; that he would buy and sell the hogs on the market and charge a commission and the cost of vaccination. This was the only conversation between the parties where any statements or repre-

sentations were made concerning the soundness, health, quality, or condition of the hogs in question.

If any warranty, either express or implied, exists it must arise out of this agreement, which was not a sales agreement but an agency agreement to purchase for a specified commission from 150 to 300 head of "good feeding hogs." Appellee saw all the hogs purchased before he accepted delivery and made payment therefor, and there is nothing in the evidence to indicate that either appellants or appellee had any knowledge that the 59 head of hogs were afflicted with disease at the time that they were delivered. The hogs delivered to appellee were purchased by appellants upon the open market at the stockyards; they were all vaccinated and there was no evidence of any diseased condition at the time of delivery. Two or three days after delivery of the 59 head symptoms of a diseased condition were disclosed.

It was the theory of appellee's action, and the theory upon which the cause was tried in the court below, that a warranty was involved in or was collateral to this agency agreement, and that the agents would be liable for a breach thereof if the hogs purchased by them and delivered to the appellee were not "good feeding hogs." As far as we have been able to determine the particular question of whether an implied warranty is collateral to an agency agreement, under which the agent purchased for his principal certain described personal property for a particular purpose, has not been before the courts of appeal of this State for determination, nor has our attention been directed to any persuasive precedent in other jurisdictions. If any warranty existed in connection with the parol agreement of June 22, 1935, it necessarily would have been an implied warranty, for no subsidiary agreement was

made and no representations whatever were made by the alleged seller. The most that can be said is that the appellants agreed to purchase for appellee hogs which appellee directed were to be good feeding hogs.

In the case of *Michigan Pipe Co.* v. *Sullivan County Water Co.* (1920), 190 Ind. 14, 21, 127 N. E. 768, 129 N. E. 5, Judge Lairy points out the distinction between an implied warranty and an express warranty in the following language:

"Warranties are either express or implied. An express warranty is created by an express contract between the parties and is subsidiary to the principal contract of which it forms a part. An implied warranty is an obligation of like nature which arises by force of law in certain cases and under certain conditions and circumstances, where relations between the parties, the subject-matter of the principal contract and the circumstances under which it was made are of such a character as to justify the court in imposing on the seller by force of law the obligation of a warranty as to the quality of the thing sold. In sales of personal property *caveat emptor* is the rule; implied warranties constitute an exception."

But warranties are applicable to sales. When an agent purchases goods for his principal and for a commission, even though the agent pays the purchase price and accepts delivery, and then redelivers to his principal who reimburses the agent for all costs and expenses, is the relationship between the agent and his principal that of vendor and vendee and are the rules pertaining to warranties in the sale of personal property applicable? We think not.

It is a well recognized rule of the law of agency that an agent cannot, either directly or indirectly, have an interest in the subject-matter of the agency without the consent of his principal, freely given, after full knowledge of every matter known to

the agent that might affect the principal. An agent employed to buy cannot become the seller without the knowledge and consent of his principal. An agent cannot occupy the inconsistent positions of buyer and seller, or of principal and agent, in the same transaction. *Pomeroy* v. *Wimer* (1906), 167 Ind. 440, 78 N. E. 233, 79 N. E. 446; 2 Am. Jur., Agency, § 254, pp. 205, 206.

There was nothing in the evidence to indicate that appellants purchased any of the particular hogs for themselves or made any profits, as distinct from commission, in connection with the purchase or sale thereof. All the evidence indicated, and appellee pleaded, that the hogs were purchased for him. When appellants purchased the same the persons from whom they purchased were the sellers, and the appellee was the buyer within the meaning of our Uniform Sales Act (Acts of 1929, ch. 192, p. 628; § 58-101 to § 58-611, Burns' 1933). By section 1 thereof (§ 58-101, Burns' 1933), a contract to sell goods is defined as a contract "whereby the seller agrees to transfer the property in goods to the buyer for a consideration called the price." And a sale of goods is defined as "an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price." The appellants never transferred the property in the hogs in question to the appellee for a price. The property therein passed to appellee when the appellants completed the contract for the purchase thereof.

There are logical reasons why the law should imply a warranty in certain cases where a vendor furnishes goods of which he is the manufacture or producer, and where he knows the quality, soundness, or fitness thereof; but an agent purchasing goods for his principal quite often has no knowledge

thereof except what is possessed by the principal. That was true here. It is the duty of an agent in all transactions involving the subject-matter of the agency to act with the utmost loyalty and good faith in the furtherance of the interest of his principal. He must exercise ordinary care in the performance of his duties, and if he negligently fails to do so he is liable to his principal for resultant damages; but in the absence of an express agreement by which the agent expressly agrees to be so bound, the agent is not an insurer of the success of his undertaking and he does not guarantee his principal against incidental losses, and if he acts with good faith and with due care he is not liable for losses which result from a mere mistake. *Union Mutual Life Insurance Company* v. *Buchanan* (1885), 100 Ind. 63, 83; *Sears* v. *Forbes* (1890), 122 Ind. 358, 23 N. E. 773; *Rochester* v. *Levering* (1886), 104 Ind. 562, 4 N. E. 203; 2 Am. Jur., Agency § 276, p. 221; 3 C. J. S., § 156, p. 36; American Law Institute, Restatement Agency, §§ 377, 378, 379, 400.

As we view the matter the evidence was wholly insufficient to sustain the allegation of appellee's amended complaint that the appellants warranted the soundness of the hogs purchased. The relation between the parties was not such as to cause an implied warranty to arise from their agreement.

The appellants attack the action of the trial court in giving and refusing certain instructions, but since the cause was pleaded and tried solely as an action for breach of warranty, and the same or similar instructions would not, in all likelihood, be given if the cause should be retried, it is not necessary for us to consider the same.

The judgment is reversed and the cause is remanded with direction to the trial court to sustain appellants'

motion for a new trial and for further proceedings not inconsistent with this opinion.

BLESSING, J. and STEVENSON, J., not participating.

NOTE.—Reported in 44 N. E. (2d) 177.