342 F.2d 383
 UNITED STATES of America, Plaintiff,
v.
FARR & COMPANY, a Partnership, F. Shelton Farr, William F. Prescott, Lawrence H. Dixon, John Farr, Emmet Whitlock, John C. Buys, Helen G. Downs, Partners, Defendants and Third-Party Plaintiffs-Appellants,
Superintendence Co., Inc., Defendants,
v.
BINGHAM & CO., Inc., Third-Party Defendant-Appellee.
 No. 129.
 Docket 29085.
 United States Court of Appeals Second Circuit.
 Argued October 29, 1964.
 Decided February 25, 1965.
 
 C. Dickerman Williams, New York City (Baker, Nelson, Williams & Mitchell, New York City, on the brief; Harold d'O. Baker, Robert M. Makla, New York City, of counsel), for Farr & Co., etc., defendants and third-party plaintiffs-appellants.
 Roger Hinds, New York City (Frank C. Mebane, Jr., New York City, on the brief), for Bingham & Co., Inc., third-party defendant-appellee.
 Before LUMBARD, Chief Judge, and HAYS and MARSHALL, Circuit Judges.
 MARSHALL, Circuit Judge:
 
 
 1
 Suit was commenced by the United States on behalf of the Commodity Credit Corporation [CCC] in the Southern District of New York, jurisdiction being based on 15 U.S.C. § 714b(c), against Farr and Superintendence Co., Inc. The gist of CCC's claim against Farr, the only claim that need concern us here, is that sugar sold by Farr to Societe Generale de Compensation of Paris, France, who then sold it to CCC, contained foreign matter and was unfit for human consumption without further processing. This, it was claimed, constituted a breach of Farr's promise, made to CCC, to "hold the CCC free of any loss or damage due to our failure to deliver 10,000 short tons 10% more or less FAS Santos/Rio of Brazilian white crystals under the conditions of this announcement [inviting tenders of sugar]." Farr answered, primarily insisting that the sugar met the specified standards.
 
 
 2
 Farr filed, by leave of court and pursuant to Rule 14, Federal Rules of Civil Procedure, a third-party complaint, later to be amended, against Bingham, seeking indemnity for any judgment CCC might obtain.[1] Bingham moved for summary judgment, pursuant to Rule 56, Federal Rules of Civil Procedure, the motion was granted and a judgment dismissing the amended third-party complaint was entered. The main action is still pending and the only issue before us on this appeal is whether the District Court erred in granting Bingham's motion. We hold that it did.
 
 
 3
 The theory underlying Farr's claim for indemnification seems to be, in substance, that, on the basis of Bingham's solicitation, Farr employed Bingham as its agent to secure 10,000 tons of Brazilian white sugar; Bingham agreed to and undertook to secure this sugar; and, if Farr is held liable to CCC for supplying defective sugar, Bingham must have failed to supply the specified sugar, for "Brazilian white sugar" according to trade usage is fit for human consumption without further processing and contains minimal foreign matter. We have been unable to perceive of any flaw in this theory that could properly be reached by a motion for summary judgment.
 
 
 4
 The parties seem to agree that Bingham acted as Farr's agent, and there is little disagreement with the elementary proposition of law that an "agent is subject to liability for loss caused to the principal by any breach of duty," Restatement, Second, Agency, § 401. The principal controversy instead concerns the extent of Bingham's duty.
 
 
 5
 At one level the dispute centers on whether Bingham's duty was to obtain Brazilian white sugar for Farr, or whether its duty was to obtain an executory contract for the sale of that sugar to Farr. If it were the latter, then Bingham claims that its duty was fully and faithfully discharged: it obtained the promised executory contract for sale of the Brazilian white sugar from the Instituto do Acucar e do Alcool [IAA], the Brazilian public corporation having a monopoly on the sale of sugar grown on the plantations of Brazil, and if improper sugar was supplied to Farr and ultimately to CCC, this would be a breach by IAA in the execution of its contract, not a default by Bingham. Farr sharply controverted Bingham's limited view of its duty and states in an opposing affidavit: "What we wanted, what we expected Bingham to get and what we thought Bingham did get, was sugar of specified characteristics and not an executory contract." The issue is drawn; but this aspect of the controversy over the content of Bingham's duty involves genuine and material factual issues that must be tried, not disposed of on a motion for summary judgment. Boro Hall Corp. v. General Motors Corp., 164 F.2d 770 (2 Cir.1947). Specific facts have been set forth to show that there is a "genuine issue for trial," Rule 556(e), Federal Rules of Civil Procedure as amended in 1963. The solicitations of Bingham, the letters and cables between Farr and Bingham, see Detsch and Co. v. American Products Co., 152 F.2d 473, 475 (9 Cir.1946), and the custom and usage of the international sugar trade are likely to shed some light on the question whether Bingham's duty was to procure the sugar or an executory contract; and the presentation and exploration of these items should not be confined to an exchange of affidavits, see Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 628-629, 64 S.Ct. 724, 88 L.Ed. 967 (1944).
 
 
 6
 At another level, the dispute concerning the extent of Bingham's duty involves the question, assuming arguendo that Bingham's objective was to procure Brazilian white sugar rather than merely to procure an executory contract for sale of that sugar, whether his duty was merely to use due care and skill, or whether he had a duty pure and simple to obtain the Brazilian white sugar, to fulfill his task. In some situations, for example, when the agent realizes that he is undertaking an extremely risky enterprise and warns the principal that at most an exercise of due care and skill, rather than success, could be expected, this question may turn on the facts. However, the District Court treated the question as one that was not resolved by trade custom or agreement between the parties, one that did not depend on the development of the facts and one that could easily be reached by a motion for summary judgment. The Court took the position that the limits of an agent's duty was to use due care and skill, and that he could not be held responsible for the mere failure to accomplish the result; and held that since "there is no contention by Farr, nor does the proof show any negligence by Bingham in procuring the sugar," Farr could not recover against Bingham for defects in the sugar.
 
 
 7
 Even if this interpretation of an agent's duty were correct, error could be found in the failure of the District Court to afford Farr an opportunity to amend his complaint to include allegations of negligence and to offer proof, either through affidavits or, if appropriate, at trial, to that effect. Farr adequately explained its failure to allege negligence; Bingham never specifically objected to the complaint on that ground as the debate centered on whether Bingham's assigned task was to procure the sugar or the executory contract, and Farr thought its indemnity claim could succeed without an allegation of negligence. An opportunity to amend and not a summary judgment would appear to be the proper remedy in this situation.
 
 
 8
 Moreover, I am prepared to go one step further and to hold that in certain circumstances an agent discharges his duty not merely by using due care, but by fully performing his assigned task. Where (1) the agent is to be paid for his services, (2) there is no understanding between the parties limiting the agent's duty to use due care rather than to achieve the agreed-upon objective,[2] (3) the agent's failure to achieve the agreed-upon objective is due to reasons not beyond his control, and (4) the principal is not informed of the agent's failure and is thereby unable to take appropriate self-protective steps,[3] then it would not be unfair to hold the agent responsible for the foreseeable loss to the principal caused by the failure of the agent to obtain the specified type of goods. See Bank of British North America v. Cooper, 137 U.S. 473, 11 S.Ct. 160, 34 L.Ed. 759 (1890); cf. Cassaboglou v. Gibb, 11 Q.B.D. 797, 802, 805 (C.A. 1883).[4] Under these circumstances it would not be unreasonable for a principal to expect that his agent will do all that he has voluntarily undertaken to do, and to rely on this expectation. Farr also alleges that Bingham held itself out as especially qualified to operate in the Brazilian market as it had a correspondent there; if such representations could be established, then Farr's reliance would be all the more justified and Bingham's responsibility that much greater.
 
 
 9
 Indemnification is merely a legal tool for passing a liability on to the party who is ultimately responsible for the loss the court has attempted to redistribute. If Farr suffers a loss by reason of supplying CCC with defective sugar, which allegedly could not be the case if Brazilian white suger were procured for Farr, then it would seem fair to shift that loss to Bingham if its task was to procure Brazilian white sugar. Bingham certainly could or should have foreseen that a failure to supply Farr with sugar that measured up to the standards of Brazilian white sugar might expose Farr to the risk of liability at the suit of a subsequent purchaser, in this case CCC. The fact that CCC has based its suit on Farr's expressed promise to hold CCC free from any loss on its purchase of the sugar does not impair Farr's claim for indemnification. If liability is imposed upon Farr, the failure to provide Brazilian white sugar can be listed as one of the primary causes of this loss and responsibility for this can in turn be traced back to Farr's alleged reasonable reliance on Bingham's alleged voluntary assumption of the task of procuring Brazilian white sugar and the alleged failure of Bingham to procure that sugar.
 
 
 10
 Finally, there is no merit to the District Court's holding, in part based on the refusal to acknowledge Farr's claim for indemnification, that Farr's claim is barred by the statute of limitations. For the statute of limitations cannot possibly start to run on an indemnity claim until the party seeking indemnification suffers a loss. See generally Federal Reserve Bank of Atlanta for Use of American Surety Co. of New York v. Atlanta Trust Co., 91 F.2d 283, 117 A.L.R. 1160 (5 Cir. 1937). That point has not yet been reached, although the initial transactions with Bingham took place in the spring of 1955. CCC notified Farr on or about January 30, 1956 that the sugar was defective; suit was not commenced by CCC against Farr until December 23, 1959; Farr filed its original third-party complaint on June 19, 1962 and the amended version on January 3, 1963; and as the primary suit is still pending, no liability has yet been imposed on Farr.
 
 
 11
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 The District Court's jurisdiction of the controversy appeared to be ancillary to its jurisdiction over the main action, see Dery v. Wyer, 265 F.2d 804 (2 Cir. 1959); Pennsylvania R. Co. v. Erie Ave. Warehouse Co., 302 F.2d 843 (3 Cir. 1962)
 
 
 [2]
 The District Court presumed that there was no such understanding. It is clear, however, that on remand Bingham should have the opportunity to allege and prove such an understanding
 
 
 [3]
 Superintendence inspected the sugar, but it acted on behalf of CCC and did so only after Farr had promised to hold CCC free of any loss from supplying nonconforming sugar
 
 
 [4]
 The question is not whether the agent expressly or impliedly warranted "the quality of the sugar" in the sense that he can be held responsible for latent defects in sugar of the kind requested by the principal. Therefore the cases relied upon by the District Court, Carmichael v. Lavengood, 112 Ind.App. 144, 44 N.E. 2d 177 (1942), and Windsor Steel Products, Ltd. v. Whizzer Industries, Inc., 157 F.Supp. 284 (E.D.Mich.1957), aff'd 261 F.2d 837 (6 Cir. 1958), seem inapposite
 This case could raise interesting choice-of-law problems: The geographical configurations are varied (Farr and Bingham are New York firms; the sugar was to be obtained in Brazil; Farr was acting as the United States representative of a French concern; and the sugar was purchased for shipment to Iran); the District Court's jurisdiction over this controversy was not based on diversity, see footnote 1; and CCC is a wholly-owned agency and instrumentality of the United States Government, see Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S. Ct. 573, 87 L.Ed. 838 (1943). However, apparently there is no conflict of laws between the relevant jurisdictions, even in regard to the statute of limitations point discussed later, and therefore all choice-of-law questions can best be left unresolved.
 
 
 
 12
 LUMBARD, Chief Judge (concurring).
 
 
 13
 I agree with Judge Marshall's opinion except as to the applicable legal principles regarding the circumstances in which Bingham may be held liable absent a finding of negligence.[1] In my view, Bingham may be held liable for Farr's loss, apart from negligence, if and only if it be found that Bingham promised Farr that it would assume such liability if it failed to secure Brazilian white sugar. I feel that Judge Marshall errs in listing as requirements for the imposition of liability without fault elements which are not relevant to such an inquiry, and also in placing the burden of proof regarding this issue on Bingham rather than on Farr.
 
 
 14
 As footnote 4 of Judge Marshall's opinion indicates, the parties have not referred us to the law of one particular jurisdiction as controlling. I proceed to the merits on the likely assumption (subject to correction by the parties at trial) that the basic principles of the law merchant applicable here are in accordance with the laws in all relevant jurisdictions.
 
 
 15
 The governing legal principles are set forth in the Restatement of Agency 2d. "Under ordinary circumstances, the promise to act as an agent is interpreted as being a promise only to make reasonable efforts to accomplish the directed result." 2 Restatement, Agency § 377 comment b. If the agent holds himself out as having special skills, he is held to the standard of care he sets for himself — but the relevant inquiry is still one of due care. Id. at §§ 376, 379 & comments a & c. But the parties may provide specifically that the agent warrants the performance of his assumed task regardless of fault. "The agent may warrant that his undertakings will be successful." Id. at § 379 comment a. Thus there is a presumption in favor of a requirement of due care, subject to a showing that another arrangement has been made by the parties.
 
 
 16
 This is not a new or novel doctrine. On the contrary, it has been so often expressed by the courts that it is strange that it is a matter of contention here. See, e. g., Meecham, Agency §§ 524, 525 (1952) and cases cited therein; Rianda v. San Benito Title Guarantee Co., 35 Cal.2d 170, 217 P.2d 25 (1950); Anderson v. Badger, 84 Cal.App.2d 736, 191 P.2d 768 (1948); Kingsford v. Bennion, 68 Idaho 501, 199 P.2d 625 (1948); Carmichael v. Lavengood, 112 Ind.App. 144, 44 N.E.2d 177 (1942).[2]
 
 
 17
 However, Judge Marshall sets forth a combination of four factors which, it is claimed, is sufficient to impose liability upon an agent regardless of the applicable standard of care: "(1) the agent is to be paid for his services, (2) there is no understanding between the parties limiting the agent's duty to use due care rather than to achieve the agreed-upon objective, (3) the agent's failure to achieve the agreed-upon objective is due to reasons not beyond his control, and (4) the principal is not informed of the agent's failure and is thereby unable to take appropriate self-protective steps."
 
 
 18
 The second factor, the nonexistence of an agreement limiting the agent's duty to one of due care, presumes that if nothing is stated, the agent's promise to act will be interpreted as a warranty of his success, and thus the burden of overcoming this presumption would fall upon the agent, according to Judge Marshall. The seemingly unanimous view of the authorities cited above is that the agency contract is to be construed as one requiring due care of the agent, absent any statement to the contrary. Thus, the burden should be upon Farr, the principal, to show that Bingham promised to guarantee the success of its efforts to secure Brazilian white sugar, without regard to the normal due care limitation.
 
 
 19
 The remaining three factors listed by the majority bear only upon the issue of due care — that is, they are relevant only if it is found that Bingham did not warrant the success of its efforts. The existence and amount of compensation paid to Bingham (point one) is a factor in establishing the standard of care required of the agent. 2 Restatement, Agency 2d § 379. The third and fourth factors, that the loss was occasioned by circumstances not beyond Bingham's control and that Bingham failed to notify Farr of its failure to perform, appear to bear solely on the issue of whether Bingham performed with the requisite due care.
 
 
 20
 With these qualifications, I concur in the disposition made by Judge Marshall.
 
 
 
 Notes:
 
 
 [1]
 This of course assumes,arguendo, as does Judge Marshall's opinion at this point, that the contract is one for the delivery of sugar rather than for the production of an executory contract.
 
 
 [2]
 Bank of British North America v. Cooper, 137 U.S. 473, 11 S.Ct. 160, 34 L.Ed. 759 (1890), relied upon by the majority, does not contradict the principles stated here. In that case, the agent had requested and was given specific, detailed instructions from his principal, and then proceeded to disregard them. It is clear that disregard of reasonable directions constitutes a breach of duty on the part of the agent. 2 Restatement, Agency § 385 (1). In the instant case, there is no allegation of such intentional disregard of instructions
 
 
 
 21
 HAYS, Circuit Judge (concurring in the result).
 
 
 22
 I concur in the result and in Judge Marshall's opinion, except that, in view of Judge Lumbard's concurrence, I believe that the material on agency should be eliminated. The discussion of agency rules is premature and may prove to be wholly inapplicable or unnecessary when the facts are brought out on a trial.